IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA, | CR 19–78–BLG–DLC |
|---|---|
| Plaintiff, | |
| vs. | ORDER |
| DEKKER KARL BOEKE, | |
| Defendant. | |

Before the Court is Defendant Dekker Karl Boeke's motion to suppress. (Doc. 25.) The Court denies the motion.

## FACTUAL BACKGROUND

On June 21, 2019, a federal grand jury issued its indictment in this matter, charging Boeke with one count of prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and one count of unlawful user of controlled substance in possession of a firearm in violation of 18 U.S.C. § 922(g)(3). (Doc. 2.) The firearm involved in both charges was found in a lockbox during a residential search conducted pursuant to a warrant, the validity of which is not at issue. Following discovery of the firearm, Boeke made incriminating statements to law enforcement officers.

-1-

Shortly before midnight on March 28, 2019, state and Musselshell County law enforcement officers executed a search warrant at a home in Roundup, Montana. Acting on reports that a resident of the home, Chase Allen, had been distributing heroin in Roundup, the officers were looking for evidence of the offenses of possession, possession with intent to distribute, and distribution of dangerous drugs. (Docs. 27-3 & 27-4.) Specifically, they sought drugs, paraphernalia, weapons, and various other evidence and contraband of drug possession and distribution. (Docs. 27-3 & 27-4.)

When the officers arrived on the scene, they found four men, including Boeke, in the residence. (Doc. 27-1 at 4.) According to statements later made by Boeke and Allen, Boeke had been living in Allen's bedroom for the two weeks prior to the search. (Doc. 27-1 at 5–6.)

The officers found evidence of drug possession and distribution in Allen's bedroom, including Suboxone film, a box containing suspected heroin, a second box containing a marijuana grinder and Narcan, a scale, over a thousand dollars in cash, and Ziploc baggies, some of which contained suspected heroin. (Doc. 27-6.) They found the relevant lockbox in one of the bedroom's closets. (*Id.*)

After a brief colloquy regarding their right to open the lockbox, Musselshell County Deputy Sheriff Travis Manning popped the box open with a knife. Inside,

he found Ziploc baggies, a Zelda wallet containing Boeke's driver's license and $263.00 in cash, and a black and purple Ruger .38 special LCR revolver with four rounds in the cylinder. (Doc. 30.)

At approximately 2:00 a.m. on March 29, 2019, Boeke was informed of and waived his Miranda rights. (Doc. 27-7 at 3–4.) Speaking to state officers Cameron Pavlicek and Scott Johnson, Boeke admitted to using heroin two to three times daily but stated that he did not feel comfortable answering any questions regarding involvement in drug distribution. (*Id.* at 7.)

Boeke also demonstrated an awareness of the subject firearm. Pavlicek asked, "How 'bout the uh, any, any kind of firearms in the house that you're aware of?" Boeke responded, "Uhhm, in a lockbox, yeah." (*Id.* at 11.) The conversation continued:

> Pavlicek: That one in the closet up there?
>
> Boeke: Mmm hmm.
>
> Pavlicek: Who[se] is that?
>
> Boeke: Well I, eh, eh, it is a friend of mine's. It's registered to her.
>
> Pavlicek: Oh…
>
> Boeke: She went up shooting and left it and put it in the lockbox cuz I'm not supposed to be around 'em either.
>
> Pavlicek: Okay.

Boeke: So I...

Pavlicek: I mean if we ran prints or, just be honest, did you ever touch it to put it in there or anything like that?

Boeke: I touched it to put it in there, yeah.

Pavlicek: Okay. Uhhm, how 'bout ammo, any, any rounds, nothin' like that?

Boeke: There is uh, four rounds in it. I was always taught as a safety thing, to take one round out and leave it to where, cuz revolvers don't have safety.

...

Pavlicek: Okay. Your prints on any of those other rounds on that cylinder?

Boeke: Maybe. Yeah, [m]aybe.

Pavlicek: Did you go shoot with her or why would they, why would . . .

Boeke: No.

Pavlicek: Why were your prints on 'em?

Boeke: Because she had it full... fully loaded. And like I aforementioned, said it was the safety cuz revolvers don't have safety. That's the safety for it, is you take a bullet out.

Pavlicek: No, but I mean on all the, on all the other rounds in there?

Boeke: Oh I don't know. Maybe. I don't know.

Pavlicek: Did you load it for her or somethin'?

Boeke: Uhhm...

...

Pavlicek: Okay. So you, they might... Why would your prints be on there I guess?

Boeke: Probably cuz uh, someone else was lookin' at it and uh, I don't give a loaded firearm to anybody else.

Pavlicek: Okay. At some point you're sayin' you unloaded it?

Boeke: Mmm hmm.

Pavlicek: Okay. And then...

Boeke: It's possible, yeah.

(*Id.* at 11–12.)

Boeke now moves to suppress the evidence found in the lockbox and the statement taken by officers Pavlicek and Johnson.

## DISCUSSION

Although he does not challenge the warrant itself, Boeke contends that the lockbox "was opened in violation of [his] constitutional rights." (Doc. 26 at 6.) He argues at length that he had an expectation of privacy in the lockbox and that he did not forfeit his privacy rights by placing the box in Allen's bedroom, where he was living. (Doc. 26 at 5–6, 8–9.) However, there is no disagreement on this issue. Setting aside his status as a probationer (upon which the government does not rely), Boeke had a reasonable expectation of privacy in things he owned and shielded from public view. But the inquiry does not end here. Rather, the issue is

whether the government's intrusion into that privacy interest was reasonable. Because the lockbox fell within the scope of a valid warrant, the Court concludes that it was.

The Fourth Amendment sets forth the general requirement that searches be conducted pursuant to a warrant:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Here, a warrant was issued and the validity of the warrant itself is not challenged. However, "[a] warranted search is unreasonable if it exceeds in scope or intensity the terms of the warrant." *United States v. Becker*, 929 F.2d 442, 446 (9th Cir. 1991) (quoting *United States v. Penn*, 647 F.2d 876, 882 n.7 (9th Cir. 1980) (en banc)). "To pass constitutional muster, the 'search must be one directed in good faith toward the objects specified in the warrant or for other means and instrumentalities by which the crime charged had been committed." *United States v. Johnston*, 789 F.3d 934, 941 (9th Cir. 2015) (quoting *United States v. Rettig*, 589 F.2 418, 423 (9th Cir. 1978). A search falls within the scope of a warrant if "a

reasonable officer [would] have interpreted the warrant to permit the search at issue." *Id.* (quoting *United States v. Gorman*, 104 F.3d 272, 274 (9th Cir. 1996)).

"It is axiomatic that if a warrant sufficiently describes the premises to be searched, this will justify a search of the personal effects therein belonging to the person occupying the premises if those effects might contain the items described in the warrant." *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1984). In this instance, the warrant authorized the search of the entirety of the Roundup residence for evidence of drug crimes. A "reasonable officer" would conclude, as the searching officers did, that a metal lockbox was likely to contain evidence of drug use and/or distribution when it was found in the same room as other boxes containing drugs, paraphernalia, contraband, and related evidence. *Johnston*, 789 F.3d at 941; *see United States v. Ayers*, 924 F.2d 1468, 1479 (9th Cir. 1999) ("[I]n the case of drug dealers, evidence is likely to be found where the dealers live." (citation omitted)); *United States v. Williams*, 687 F.2d 290, 293 (9th Cir. 1982) ("It was reasonable to infer that evidence of marijuana cultivation, such as the marijuana seed, small implements used in cultivation, or documents identifying the cultivator would be found in the lunch box.").

Boeke asserts that his Fourth Amendment rights were violated when the box was opened. (Doc. 26 at 7.) However, "[a] lawful search of fixed premises

generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820–21 (1982). A lock is not determinative, as "a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf [may] claim an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attaché case." *Id.* at 821. And it does not matter that officers could not see into the box prior to forcing it open. *Williams*, 687 F.2d at 293 ("[I]t would be absurd to suggest that a warrant to search the premises could be frustrated by simply concealing the marijuana inside a closed container.")

Nor is it relevant whether law enforcement knew, when they broke the lock, whether the box belonged to Boeke. Although it is true that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause," officers were not relying on Boeke's "mere propinquity" to the other residents of the house as justification for the search of the lockbox. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (addressing a search of a bar patron's person when searching officers had a valid warrant to search the bar itself). Where a valid warrant is issued on the grounds that evidence of a crime is likely to be found in a designated location, there is no requirement that searching

officers determine who owns a closed container before opening it. *See United States v. McLaughlin*, 851 F.2d 283, 287 (9th Cir. 1998).

Finally, the destruction of the lockbox does not entitle Boeke to suppression. "[O]fficers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979). Looking to the facts and circumstances of the search at issue here, the officers' reasonable belief that they would find in the lockbox evidence of a crime rendered their conduct in opening the box reasonable. *See, e.g., Becker*, 929 F.2d at 444 (finding reasonable the use of a jackhammer to break open a recently poured concrete slab next to a shop in which methamphetamine had been manufactured).

Accordingly, IT IS ORDERED that Boeke's Motion to Suppress (Doc. 25) is DENIED.

Dated this 22nd day of August, 2019.

Dana L. Christensen, Chief Judge
United States District Court